SAMUEL D. SAWYER *et al.* v. A. B. SYMNS *et al.*

1. INQUIRY, *to be Made by Firm Buying Goods.* When a firm doing business as general merchants order goods of one whom they know is not dealing in such goods, and they are shipped to them by a wholesale house in a city near their place of business, and an invoice commencing "Bought of A. B. S. & Co., . . . Messrs. S. & C.," is sent to them at the time the goods are, it should lead the firm to inquire of whom they bought, and whom they should pay for the goods received.

2. INNOCENT PARTIES, *Which to Sustain Loss.* Whenever one of two innocent parties must suffer by the acts of a third, the one who has enabled such third party to occasion the loss, must sustain it.

*Error from Atchison District Court.*

THE opinion states the case.

*Jackson & Royse,* for plaintiffs in error.
*Tomlinson & Eaton,* for defendants in error.

Opinion by HOLT, C.: The defendants in error, as plaintiffs, brought this action to recover the amount of a bill of groceries, claimed by plaintiffs to have been bought of them by defendants through their agent, one Littonsky. The defense interposed was that Littonsky was not their agent, but was the principal from whom defendants purchased, and to whom they made full payment at the maturity of the debt. This action was tried by the court without a jury, at the February term, 1886. The court made special findings of fact and conclusions of law, and rendered judgment for the amount of plaintiffs' claim, $102.48.

In 1883, the defendants were keeping a small store at Comet, Brown county, a little village off the line of the railroads. Littonsky had often sold them dry goods and notions out of a cart, in which he carried his goods. In December, 1883, John D. Crist, one of the defendants, met Littonsky in the cars as he was going to Atchison, and told him that he was going there to purchase goods; Littonsky asked and obtained per-

mission to buy the goods for him, giving as a reason that he had an uncle in Leavenworth of whom he could get money, and could furnish them to Sawyer & Crist cheaper than Crist could buy them himself, and still make his commission; where-upon Crist made out a list of groceries and handed it to him. Littonsky, obtaining a letter of introduction, went to the store of plaintiffs in Atchison, and ordered the groceries for Sawyer & Crist, and guaranteed their payment. The plaintiffs shipped them at once to Comet, to the defendants, and at the same time sent them an invoice, which had for its heading, "Bought of A. B. Symns & Co., wholesale grocers, . . . Messrs. Sawyer & Crist, Comet, Kansas." The goods were received by Sawyer & Crist, and placed in their general stock. After-ward Littonsky wrote them a letter for the amount they were owing him, $38.50, for goods previously delivered from his cart, and before thirty days had expired after he had ordered the goods, he called at the store of defendants, when they paid him not only the amount they owed him, but also the amount of the bill of goods sent by A. B. Symns & Co. He had never before ordered any goods for them, nor did plaintiffs know him before this letter of introduction. He left the day after he received the money, and has never been seen or heard of since by the parties to this action. An effort was made to look him up, which proved futile. At the expiration of thirty days the plaintiffs notified the defendants that their bill was due, and considerable correspondence passed between the parties. About a year afterward the account was handed to Tomlinson & Eaton for collection. Tomlinson presented it to Sawyer, one of the defendants, when Sawyer executed a firm-note, due six months after date, without interest, which the plaintiffs refused to accept, and an action was immediately brought upon the account. Sawyer, who was then on his way to Kansas City to visit his former partner, was served with summons, and again executed a firm-note in favor of plaintiffs, due in sixty days, with interest, and gave it to Tomlinson subject to the approval of plaintiffs. From Kansas City the defendants

inquired by telephone whether plaintiffs would accept such note, and were at once notified that they would not.

Defendants complain that the findings of fact are not sustained by the evidence; that they are not sufficiently definite and certain, and that from the testimony introduced the judgment should have been for the defendants instead of the plaintiffs. We think none of the grounds taken by the defendants are tenable. By an examination of the circumstances attending the sale, the evidence shows that the plaintiffs sent an invoice when they shipped the goods, which was notice to the defendants that the groceries had been sold to them—not to Littonsky. In this transaction the plaintiffs were doing business in no unusual manner; on the contrary, the evidence shows that this mode of selling goods was frequently practiced. The heading of the invoice should have

1. Inquiry to be made by firm buying goods.

furnished the defendants with sufficient information that they were dealing with plaintiffs, and also from it and other circumstances within their knowledge, that Littonsky bought the goods of plaintiffs for them, and that he was not the party from whom they were buying these goods direct. There is no evidence that could, even by inference, make Littonsky the agent of plaintiffs; on the other hand, if he were not employed by the defendants as their agent to buy the goods in question, though a part of Crist's testimony might be construed to make him one, it was at their suggestion that he purchased them.

It is established that plaintiffs, in all this matter, pursued the methods customary and usual among merchants; it also appears that defendants paid Littonsky in good faith. He took advantage of their acquaintance with and confidence in him, to obtain this money. It is a well-known and oft-approved rule, that whenever one of two innocent parties must suffer

2. Innocent parties, which to sustain loss.

by the acts of a third, the one who enabled such third party to occasion such loss must sustain it. Applying this principle to the evidence in this action, it is plain that the defendants should pay the second

time for the goods, rather than that plaintiffs should lose them without fault on their part.

The defendants cite *Lumley v. Corbett*, 18 Cal. 494, as authority in their favor decisive of this case. The facts in that case were: That one Broadhurst was, and had been for some time, a wholesale merchant in San Francisco, having a stock in his storehouse from whom Corbett had been in the habit of buying goods of the same kind as those named in the action brought, and paying him therefor. He bought of Broadhurst five hogsheads of ale, and as he did not have it in store he obtained an order from Lumley and gave it to Corbett. The ale delivered was Lumley's, but the defendant believed it to have been Broadhurst's, and paid him for it. That authority is not entirely applicable in this case. It differs in this, and we believe the difference a material one: Broadhurst was a merchant who usually carried a large stock of the same kind as those sold; Littonsky did not own a store, never had dealt in the kind of goods ordered, did not pretend to own them, but said he could buy them elsewhere; Broadhurst had repeatedly sold and received payment for goods of like character; Littonsky had never even pretended to traffic in similar goods before; Corbett himself procured the goods upon the order "to deliver" them; these plaintiffs sent the goods upon the order of Littonsky given personally to them; the plaintiffs in this action sent an invoice to defendants which showed that defendants had bought the goods of plaintiffs; these defendants paid Littonsky for goods he did not carry; Corbett paid Broadhurst, as he had often done before. We think this authority should not control the decision of the case.

The defendants asked that the findings be made more definite and certain, and that some of them, designating the ones, should be set aside for the reason that they were not supported by the evidence. They were voluminous, and sufficiently comprehensive, definite and certain to support the judgment. Probably one of the findings was more favorable to the plaintiffs than the evidence would justify, but under the evidence brought here and the other findings, the error was immaterial.

There is very little conflict in the evidence, and from the almost undisputed facts in the case, the judgment was correctly given in favor of the plaintiffs.

It is therefore recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.